# IN THE UNITED STATE DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ABINGDON, VA
FILED

August 29, 2024

LAURA A. AUSTIN, CLERK
BY: /s/ Kendra Campbell
DEPUTY CLERK

|  |  |  |
|---|---|---|
| **TONY A. MESSER,** | ) | |
| **KEVIN N. MUMPOWER,** | ) | |
| **JANICE L. BOOHER,** | ) | |
| **PATRICIA C. EADS,** | ) | |
| **PHILIP E. BARBROW,** | ) | |
| **BENJIE G. HICKS,** | ) | |
| **KENDALL W. LUTTRELL,** | ) | |
| **DARRELL G. MURRAY,** | ) | |
| **DAVID A. STOVALL,** | ) | |
| **DENNIS J. STILTNER,** | ) | |
| **TIMOTHY M. WAMPLER,** | ) | 1:24cv37 |
| **MICHAEL L. PARKER,** | ) | |
| **CHARLES E. VESTAL,** | ) | |
| **JIMMY AMBERGEY,** | ) | |
| **DAVE S. BOOHER,** | ) | |
| **JOANNE T. BOOHER,** | | |
| **LARRY RICHARDS,** | ) | |
| on behalf of themselves and | ) | |
| on behalf of others similarly | ) | |
| situated, | ) | |
| | ) | |
| **Plaintiffs.** | ) | |
| v. | ) | |
| | ) | |
| | ) | **JURY TRIAL** |
| **GARRISON INVESTMENT GROUP LP,** | ) | **DEMANDED** |
| | ) | |
| **JOSEPH B. TANSEY,** | ) | |
| | ) | |
| **STEVEN SCOTT STUART,** | ) | |
| | ) | |
| **GIG GP LLC,** | ) | |
| | ) | |
| **JTSS BORROWER LLC,** | ) | |
| | ) | |
| **JOSHUA BRANDT,** | ) | |
| | ) | |
| **JULIAN WELDON,** | ) | |

BRIAN STEVEN CHASE,                                )
                                                  )
GARRISON SPECIAL OPPORTUNITIES GP LLC)
                                                  )
GARRISON COMMERCIAL FUNDING VIII LLC, )
                                                  )
GARRISON FINANCIAL ASSETS MM LLC,                 )
                                                  )
GARRISON SPECIAL OPPORTUNITIES                    )
        HOLDINGS GP LLC,                          )
                                                  )
BCPI ACQUISITIONS, INC.,                          )
                                                  )
GARRISON BRISTOL LLC,                             )
                                                  )
GARRISON BRISTOL HOLDINGS LLC,                    )
                                                  )
                                                  )
        Defendants.                               )

## COMPLAINT

## Introduction

1.   The Plaintiffs, on behalf of themselves, and others similarly

situated comprising all those plaintiffs who are class members in *Messer*  v.

*Bristol Compressors Int'l., LLC* Case No. 1:18CV00040 (W.D. Va. Mar. 2020)

hereafter collectively the "Class" or "Plaintiffs", by counsel, bring this action

against Garrison Investment Group LP, ("Garrison"), the owner of Bristol

Compressors International, LLC ("BCI" or "Bristol"), formerly Bristol Compressors

International, Inc.) and Garrison owners, agents and affiliated entities and owners

who managed, controlled and liquidated BCI, while violating both the Worker

Adjustment and Retraining Notification Act, (WARN Act), 29 U.S.C. § 2104(a)(l)-

(2),

and the Employee Retirement Income Security Act (ERISA) 29 U.S.C. §1132 (a)(1)(B) by failing to give proper notice of closing or pay backpay, withholding stay pay and refusing to pay severance pay under the BCI Severance Pay Plan. These violations of the law were intentional or at a minimum the result of failure to conduct the requisite due diligence for knowing and following the legal and regulatory requirements and obligations owed to more than 400 employees for a manufacturing plant closing well known in the industry. In doing so, Garrison unjustly, unfairly and illegally failed to pay wages and benefits owed to the Plaintiffs.

2. This suit is a continuation of the prior class action cited above for the purpose of collecting judgments for the Plaintiffs. Plaintiffs seek **judgment of liability** and both equitable and legal remedies against Garrison, its agents, related entities and individual owners as employers and fiduciaries for their "instrumentality" control, management and liquidation of BCI in violation of the WARN ACT by unjustly and illegally depriving plaintiffs of required notices of BCI plant closure, attendant backpay, stay-pay, and the unjust and unlawful denial of their vested employee benefit Severance Pay Plan (SSP) in violation of ERISA. Defendants liquidated BCI and knowingly, recklessly and intentionally distributed the receipts while failing to pay their legal and fiduciary obligations to Plaintiffs under these statutes.

## PARTIES

## PLAINTIFFS

3.    Plaintiffs are former employees of BCI and worked at the Bristol Compressors manufacturing facility in Bristol Va. when Garrison's Restructuring Officer announced on July 1, 2018, it would cease operations and close. They are also members of the Class certified by this Court in the class action *Messer v. Bristol Compressors International LLC et al.* cited above. They and the class members they now represent are the individual employees who were given judgments against BCI by this Court entered on November 3, 2021, for ONE MILLION THREE HUNDRED NINTY TWO THOUSAND, NINE HUNDRED FIFTEEN DOLLARS AND FORTY CENTS, ($1,392,915.40) for failure to give 60-day notice or backpay, agreed stay pay and interest.

4.    After the Court of Appeals confirmed the Plaintiffs' BCI Severance Pay Plan (SPP) had not been terminated, judgment for their severance pay was granted by this Court for the class beneficiaries. *Messer, et al. v. Bristol Compressors International, LLC, et al.*, No.21-2363, p. 8 (4th Cir. 2023) (per curiam).

5.    On January 17, 2024, this Court granted amended judgment on behalf of these class members who were owed severance pay totaling TWO MILLION FOUR HUNDRED SEVEN THOUSAND, FOUR HUNDRED SEVENTY-ONE DOLLARS AND NINTY CENTS ($2,407,471.90) for severance pay benefits plus interest. These two judgments against BCI total $3,800,387.30.

6.    An additional judgment against BCI for fees and costs for a portion of work performed by counsel was entered on March 25, 2024 in the amount of TWO HUNDRED SEVENTY SEVEN THOUSAND and SEVEN HUNDRED SEVENTEEN

Dollars and eighty one cents ($277,717.81).

7. These three judgments total FOUR MILLION SEVENTY-EIGHT THOUSAND ONE HUNDRED FIVE DOLLARS AND ELEVEN CENTS. ($4,078,105.11).

8. Applicable federal law under these facts make these defendants liable to Plaintiffs for these judgments.

9. No payment has been made on these judgments.

## DEFENDANTS

10. **GARRISON INVESTMENT GROUP, LP** ("Garrison") is a foreign Limited Partnership registered in Delaware. Garrison is a private firm with its principal place of business and mailing address reported at 1290 Avenue of the Americas, Suite 914, New York, New York 10104. Garrison is and was at all relevant times registered to conduct business in Virginia, having its registered office and registered agent in Richmond, VA.. In this Court in the matter of *Messer* v. *Bristol Compressors Int'l., LLC* Case No. 1:18CV00040 (W.D. Va. Mar. 2020), Garrison was a named defendant. In this litigation Garrison acknowledged that it was the sole owner of BCI LLC. Garrison participated in the proceeding by having its own counsel defend the actions taken by BCI and Garrison's Restructuring Officer during the winddown and closure of BCI.

11. **JOSEPH B. TANSEY** is a resident of New York City and a partner, Managing Director and president of Garrison for more than 17 years. He is also the current Managing Director of HPS Investment Partners, LLC, also in New York City.

Public private equity firm profiles report that Joseph B. Tansey owns 75% or more of Garrison's assets. He was at all times relevant, the President and partner of Garrison owning approximately 75% of Garrison assets.

**12. STEVEN SCOTT STUART** is a resident of San Francisco and a **Garrison Pa**rtner, owner.

13. **GIG GP LLC**, a Delaware company  identified by Garrison in the prior case as the Parent of Garrison. It is also a general partner of Garrison.

14. **JTSS BORROWER LLC**, is a Delaware company Garrison identified as its Grandparent.

15. **JOSHUA BRANDT** (Brandt) is a resident of New York City and a Managing Director of Garrison. As part of his job to oversee Garrison's "investment and monitor and direct" BCI's operation, he was assigned by Garrison to sit on BCI's "Management Board." He was a Partner and Managing Director at Garrison Investment Group, where he served as Head of Corporate Special Situations. The Garrison website says that "he serves on the Board of Directors of various Garrison portfolio companies."

16. **JULIAN WELDON,** is a resident of New York City, and is or was Vice President and Secretary of Garrison and held these offices before he was given the same offices in Garrison entity Garrison Commercial Funding VIII, LLC, the beneficiary of BCI Amended Deed of Trust, Assignment of Leases, Security Agreement and Fixture Filing dated July 27, 2012. This instrument conveyed all BCI assets to this Garrison entity in trust to secure $7,500,000.00. (Instrument No. 120004442, Public Records of Washington County VA.)

6

17. **BRIAN STEVEN CHASE (CHASE)** is a resident of New York City and an owner, partner and Chief Financial Officer and Chief Compliance Officer of Garrison. He is also Chief Financial Officer of Garrison subsidiary and defendant Garrison Bristol, LLC, identified as BCI owner/borrower in loan documents and BCI LLC Company-Member agreement. A 2015 LLC Agreement identified this entity as Bristol Compressors International, LLC's only member owning 100% of the company executed by Chase.

18. **GARRISON SPECIAL OPPORTUNITIES GP LLC** is a Delaware company and a Garrison General Partner.

19. **GARRISON COMMERCIAL FUNDING VIII LLC,** is a Delaware company, part of the Garrison Group, owned by Garrison and the creditor entity Lender to BCI by a recorded amended deed of trust dated July 27, 2012, public records, Washington Co. VA.

20. **GARRISON FINANCIAL ASSETS MM LLC** is a Delaware Company and a Managing Member of Garrison.

21. **GARRISON SPECIAL OPPORTUNITIES HOLDINGS GP LLC** is a Delaware company and a Managing Member of Garrison.

22. **BCPI ACQUISITIONS, INC. (BCPI)** is a Delaware corporation created by Garrison. It acted as the Grantor to secure a line of credit up to $ 9,500,000.00 for BCI operations. BCPI, along with Garrison Bristol LLC were both identified as "Borrowers" in the loan documents dated July 27, 2012, public record in Washington Co. VA.

23. **GARRISON BRISTOL LLC** is a Delaware company created by Garrison. This entity acted as borrower and signatory to a deed of trust to guarantee a line of credit loan to BCI LLC. A 2015 LLC Agreement identified this entity as Bristol Compressors International, LLC's only member and owning 100% of the company. This document was executed by defendant Brian S. Chase as the Chief Financial Officer of Garrison Bristol LLC. At this time Mr. Chase was also the Chief Financial Officer of Garrison and the Chief Compliance Officer of Garrison. *Messer* v. *Bristol Compressors Int'l., LLC* Case No. 1:18CV00040 (W.D. Va. Mar. 2020) ECF 99-1, p.7 15.

24. **GARRISON BRISTOL HOLDINGS LLC** is a Delaware company created by Garrison and identified by Garrison as BCI's grandparent.

## JURISDICTION AND VENUE

25. This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1331 29 U.S.C. §2104 and 29 U.S.C. §1132 (a)(3)(B). The business of BCI, manufacturing compressors and plaintiffs' work location was at all times located at 15185 Industrial Park Road, Bristol, Virginia 24202, within the jurisdiction of this Court. Venue in this Court is proper pursuant to 29 U.S.C. §2104(a)(5).

24. Garrison is a private equity firm having its principal office in New York, NY. Garrison was founded in 2007. Its represents that it "invests opportunistically in the debt of middle market companies primarily in the areas of corporate finance, real estate finance and structured finance" according to

SEC public documents.

25. A private equity firm generally invests in privately held companies not traded on stock exchanges for assessment of its assets, continued operations where potentially profitable with liquidation as the ultimate alternative goal to make additional profit and insure reimbursement of its investment. The private equity purchase strategy is to acquire the majority stake or total control of a company to ensure it has the decision-making power to restructure or liquidate. Garrison used this approach in acquiring BCI.

26. Private equity firms include venture capital, real estate funds, private credit, and infrastructure funds. While investment consultation and hedge funds are sometimes included, the primary function of a private equity firm is to source private companies to invest in or buy out with hopes of seeing returns through the success or sale of the company. It is reported that Garrison also managed regulatory assets in the amount of $3.12 billion with 436 clients.

27. . Garrison conducted this work using multiple legal entities, both corporations and limited liability companies for various purposes to maximize profits and reduce costs and taxes, a model an employee called, "an umbrella of entities all owned by Garrison" also referred to as a company in Garrison's "portfolio." It's website states that it "provides investment opportunities that are defensible" suggesting aggressive approaches in its management.

28. Prior to purchase of BCI, Garrison partner and president Joseph B. Tansey and Garrison partner E.J. Antonio selected and engaged a consultant known to them and previously used by them, Marshall Andrews, to assess the Bristol facility as a going business, assets and

equipment, market, etc. It then requested that he work as a BCI consultant and Chair of the Board after Bristol was purchased.

29. EJ Antonio and Andrews negotiated Andrews' agreement but did not prepare a written agreement. Garrison had Bristol enter into a verbal contract with Marshall Andrews' consulting company to formalize this arrangement. Mr. Andrews' company, Target Achievement, LLC was paid by BCI after the arrangements were agreed to between Mr. Andrews and Mr. Antonio. Antonio had BCI retain Mr. Andrews as "chairman" of the Board. verbal contract with Marshall Andrews' consulting company to formalize this arrangement. Under this agreement Bristol was to pay Mr. Andrews consulting firm Target Achievement LC $2000 a day for his work providing engineering consulting and overseeing the company.

30. Garrison assigned its Manager of Corporate Special Situations, Joshua Brandt, to manage the Bristol project on behalf of Garrison by assigning him with the responsibility to consult with Mr. Andrews and the CEO, CFO and department heads at Bristol. Brandt was also placed on the Board as a BCI Director by Garrison as a part of his work for Garrison. Mr. Brandt explained he was assigned to the Bristol Board "as part of his job as Managing Director of Special Situations and asset management."

31. Garrison acquired BCI on or about January 11, 2012.

32. At the time of acquisition BCI was a corporation, Bristol Compressors International, Inc.

33.   BCI was insolvent when acquired by Garrison, "72 hours from liquidation" according to Brandt.

34.   Garrison's acquisition of BCI occurred under the direction of

Garrison Managing Director Edward J. Antonio (EJ).

32. Mr. Antonio joined Garrison in 2011 and was known in the hedge fund management business for his work with mid-market industrial assets.

33. On January 11, 2012, the Bristol Herald Courier reported that Garrison had acquired BCI as its wholly owned subsidiary attributing the report to a statement issued by Mr. Antonio.

34. Mr. Antonio disclosed in his statement that the purchase took the form of a loan to BCI through a Garrison credit facility.

35. Following Garrison's purchase of BCI, it did not invest any capital.

36. Garrison's purchase of BCI took the form of debt, a "rescue loan" to BCI to pay BCI's then outstanding debt, then "the former equity owner relinquished control to Garrison and walked away" according to Brandt.

37. Garrison imposed on BCI a Delegation of Authority policy restricting certain positions to specific limited resources and gave its selected Board Chair, Andrews, ultimate discretion and authority under the policies.

38. The delegation of authority policy did not give the board or chair, or any designee the authority to seek additional funds, resources or order a shutdown, closure or liquidation.

39. After Garrison's acquisition of BCI, the existing Employee Handbook containing company policies and employee benefits, including the Severance Pay Plan (SPP) continued to be used.

40. Garrison approved one amendment to the BCI Employee Handbook in 2014 which deleted from the SPP severance pay for employees who were employed at BCI for less than one year.

41. The Severance Pay Plan continued in effect with payments to employees over multiple layoffs. These defined benefits were in effect on July 31, 2018, when the plant closing was announced.

42. Garrison structured its investment in Bristol by debt as a secured loan from the Garrison company, Garrison Commercial Funding VIII LLC, owned by Garrison, secured by all Bristol assets. Garrison shortly thereafter subordinated its first lien on all assets to Wells Fargo for a managed line of credit for Bristol operating funds.

43. On January 9, 2012, BCI Inc. executed a deed of trust, assignment of leases, security agreement and fixture filing (collectively "Assets Conveyance") conveying all its assets in trust to Linda Rehak as Trustee and agent Beneficiary for Garrison Commercial Funding VIII LLC, Grantee, an entity created and owned by Garrison, for no more than $7, 500,000.00 principal debt. This transaction is Garrison's investment by debt.

44. BCI, Inc. was not capitalized.

45. Garrison then negotiated the terms under which Wells Fargo Bank, NYC, would establish and manage the line of credit from Wells Fargo for BCI's operations for the manufacture and sale of compressors with Garrison as Guarantor.

46. On July 27,2012, BCI executed a Credit Line Deed of Trust from BCI, Inc, grantor, to

Linda Rehak as Trustee for Wells Fargo Bank, National Association as *Administrative Agent* for the Lender, with grantor, BCPI Acquisitions, Inc.," (BCPI) the Borrowers, Garrison Bristol LLC (the Parent)" to secure the maximum principal $9,500,000 executed by Vicki Kiser, BCI, Inc. Vice-President Finance, July 23, 2012.

47. Garrison structured financial oversight so that Wells Fargo acted as Garrison's "Admin. agent" to manage BCI funds. These required BCI to provide status reports, request and receive withdrawals when certain sales and production metrics were met, provide proof of specific numbers of finished products, compressors and components in inventory ready for sale before additional funds could be withdrawn. BCI vendors and other payments were made from this account.

48. The Wells arrangement provided for operating funds with limits and credited Bristol'

Account for value of completed production and accounts receivable. Wells was secured by all of Bristol's assets, inventory and accounts receivable. Garrison subordinated its "debt" to Wells and took a second lien position on all Bristol assets. Under the arrangement with Wells, Bristol's liquidity availability was calculated weekly.

49. BCI's only source for cash was Wells. Garrison did not authorize BCI to conduct independent financial transactions with other banks or seek other funding sources and BCI had no unencumbered assets with which to do so.

50. BCI's Chief Financial Officer maintained phone and online contact with Wells Fargo employees for reporting finished inventory, payments received, vendor invoices, withdrawals requested and approved or declined.

51. Aside from this credit line under bank management with Wells Fargo, BCI was not

given any liquid assets or working capital. While the ceiling of the credit line loan was $9,500,000, BCI's use of the credit line was capped at $ 3,000,000, when vendor bills were $500,000 or more at times.

52. On July 21, 2015 Garrison converted BCI from a corporation to an LLC. No capital was infused for BCI's use.

53. BCI's engineering department worked on a new type of compressor to seek a better more competitive product known as the "DHX technology." Garrison refused to invest in its completion and vendors for that project and general components were lagging in early 2017.

54. In the spring of 2018 following BCI's expected winter seasonal downturn, the CFO's financial assessment report reflected serious risk and lack of liquidity for BCI requirements. Bristol could not meet the terms of payments to its vendors and suppliers. In April the accounts payable lag was $1.4 million, meaning that $1.4 million was needed to pay vendors under their extended payment terms.

55. Bristol was required to maintain liquidity in its Wells advance account at $2 million. Cash taken over that amount was considered an over-advance in violation of bank covenants and was required to be repaid immediately.

56. At the end of March 2018 Bristol's available liquidity was $1 million. The forecasted numbers in the assessment dated April 11, 2018 showed April cash availability was reduced to $606,000. The availability by June would be $171,000. And BCI was insolvent.

*57.* Also in April, the report from Bristol's Manager of International Sales revealed that there was a negative market in the Middle East implicating a loss of at least 1/3 of Bristol's business. The report reflected pressures from competitors, the local preference in the Middle East for conducting business with native retailers and salespeople and added taxes for non-native employees. The Manager noted this was not the first time this news has been transmitted to BCI.

58. BCI CFO contacted Wells Fargo in March 2018 to seek cash flow. She was told BCI debt to Wells Fargo was due in full on July 27 and Wells refused extending the credit line unless Garrison converted its debt to equity to remove Bristol's status as a leveraged loan, along with other conditions.

59. Following the CFO's report dated April 11, 2018, Garrison Director and BCI board member Joshua Brandt selected the restructuring company Garrison regularly used, Winter Harbor, headed by Dalton Edgecomb, a professional winddown and liquidation manager, for BCI engagement to begin restructuring.

60. On May 11, 2018, Dalton Edgecomb colleague, Jordan Meyers, sent to BCI Chair Marshall Andrews a savings and value analysis showing the proposed options being discussed by Garrison for Bristol, including liquidation. The analysis showed that Bristol's liquidation value would net the owner $28 million dollars. This was the highest value among all the options by far.

61. Garrison refused to convert its loan to BCI to equity as required by Wells Fargo to extend the credit line to BCI. Garrison did not extend credit or seek other banking or financing sources for BCI, nor did it permit BCI to do so.

15

62. No application was ever made by BCI or Garrison or on BCI's behalf for a Wells

Fargo substitute, different bank, investment bank, or other commercial lender. During

2018 the CFO was never asked or directed to seek different banking sources or

investment company as an alternative to Wells Fargo. Nor did she, all

circumstances denying BCI a *faltering company* status in plain view.

63. Johnson Controls, Inc. (JCI) was a major long-standing customer of Bristol. A Wells

Fargo forbearance occurred if only briefly, because JCI asked Garrison to extend Bristol's

closure to build a half year motor supply for JCI. In return JCI invested $3.5 million through

Wells Fargo to secure its final purchase orders from Bristol because JCI needed time to find a

supplier to replace Bristol.

64.  On June 1 Garrison negotiated and executed a contract with JCI to extend closure

for BCI to use available material to manufacture a six-month stock of compressors for JCI

extending BCI closure to November 2018. BCI had no power or authority to negotiate or make

such decisions but Bristol employees were asked to stay to fill the order.

65. BCI sought orders and made some sales generated by final offerings and the JCI

contract but had no authority to apply any revenue to any obligation owed its employees.

66. Garrison used none of that revenue to pay its legal obligations under the ERISA

severance pay plan or backpay for failure to give 60-day notices.

67. BCI could not and Garrison would not even pay the promised-in-writing stay-pay owed

to employees who remained to the end to complete the JCI contract for Garrison. [Stay

pay is included in the Nov. 23, 2021 Judgment.]

68. Garrison knew that BCI was insolvent having exceeded the credit line Garrison arranged with Wells Fargo and had no funds with which to pay severance pay under the SPP.

69. Garrison directed agent Edgecomb to terminate the SPP benefit plan.  Edgecomb did not take the requisite action to legally terminate the Severance Pay Plan which must be amended in writing as required by statute, instead he placed a note on the bulletin board saying that the severance pay had been eliminated and no severance would be paid.

70. Garrison's agent Edgecomb prepared the BCI letter closing notice. The notice falsely claimed that BCI was entitled to exemptions, *faltering company* and *unexpected business circumstances* [there was no dramatic, unexpected event that disrupted BCI's financial picture], under the WARN Act that excused BCI from the requirement of giving the employees 60 days' written notice of termination.

71. On July 31, 2018, Edgecomb informed all employees, via the letter, that the company would permanently close "by or about August 31, 2018" and lay-offs would commence immediately and continue through the month of August. Terminations began that day.

72.    No employee received a proper written 60-day notice of termination.

73.    BCI's ability to operate during a 60 day winddown and extend to retain or regain sufficient employees to fulfil the new Garrison/JCI contract for manufacturing JCI's stock of new motors was totally dependent upon Garrison financing and instructions.

74.    The Class Action suit by employees against Bristol and Garrison was

filed in this Court on October 19, 2018. After certifying three subclasses, denying Bristol's motions for summary judgment  (after which Bristol and Garrison terminated their counsel and ceased participating in the litigation) the Court heard evidence and found violations of  the WARN ACT and entered the backpay stay pay judgment on November 3, 2021. Following the ruling of the Court of Appeals regarding the SPP and ERISA, this Court granted additional judgment to these Plaintiffs for their severance pay, and a portion of attorney fees, all judgments totaling FOUR MILLION SEVENTY-EIGHT THOUSAND ONE HUNDRED FIVE DOLLARS AND ELEVEN CENTS ($ 4,078,105.11).

## LIABILITY AND DAMAGES

75. Garrison chose to liquidate BCI for an expected TWENTY NINE MILLION $29,000,000 and not to remedy Bristol's insolvency even with Bristol's own assets.

76.  Not only is this the pattern of some private equity companies operating as Garrison did, but this scenario is reflected in the steps Garrison took to limit Bristol's independence. These included, among other things, the management board created and chaired by Garrison selected Marshall Andrews, and composed by Garrison, spending and operating ceilings imposed on the CEO, CFO, and Board of Bristol, designation of the banking institution for Bristol, Garrison's refusal to convert its debt to equity to secure needed liquidity for Bristol's seasonal or other downturns, Garrison's refusal to provide needed capital  for development of a competitive product, and Garrison's choice to liquidate, the more

immediately lucrative for Garrison among other alternatives. And for Garrison that may have been a good outcome with a distressed company. However, the employees of Bristol who worked diligently for many years were left behind. No severance pay though promised for years and expected according to the legal terms of the ERISA employee benefit plan, the SPP.

77.  Defendants acquired BCI and used it as an instrumentality by clothing BCI As separate legal entity in order to insulate themselves from direct liability under The  general principle of corporate law "deeply ingrained in our economic and legal systems that a parent corporation ... is not liable for the acts of its subsidiaries." *United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). Unjust actions, violations of employee rights under ERISA and WARN Act and domination and control over the "subsidiary" negate this principle, called a "corporate veil" and permit the Court to use the tool of equity to disregard the existence of a BCI entity and impose liability on the owners' individual principals and their personal assets.  *Bd. of Tr. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.,* 296 F.3d 164, 171 (3d Cir.2002); *Publicker Indus., Inc. v. Roman Ceramics Corp.,* 603 F.2d 1065, 1069 (3d Cir.1979).

78. Because the alter ego and instrumentality doctrines for piercing the corporate veil  and federal common law allow  derivative liability to be placed upon a corporation's individuals these defendants are responsible for these judgments.

79.  Under federal common law and statutory law applicable here, ERISA preempts any state law of veil piercing and federal courts apply a federal common law standard of corporate separateness. Our Fourth Circuit has adopted the rule in *Alman v. Danin*, 801 F . 2d 1,3-4, (1st Cir. 1986) the doctrine of corporate entity, recognized generally, and for most purposes, will not be regarded, when do so would work, fraud, or injustice. *Thomas v. Peacock*, 39 F. 3rd, 493, 504 (4th Cir. 1994).
In *Peacock*, the Fourth Circuit also cited the Supreme Court holding, "the doctrine of corporate entity... may be disregarded in the interests of public convenience, *fairness, and equity*." *Taylor v. Standard Gas Company*, 306 U.S. 307, 322, (1939). (Emphasis added.) Also, "the corporate form may not defeat overriding federal legislative policies." *Peacock*, p. 503.

80.  In *Peacock*, our Fourth Circuit held the separation will not be recognized where it is inequitable to do so, and thereby avoid financial obligations to employee benefit plans, then concluded, "[W]e adopt the liberal veil-piercing standard enunciated by the first circuit in *Alman v. Danin*, 801 F. 2d 1,3-4, (1st Cir. 1986) for use in ERISA actions. *Id.* 504.

81.  A synthesis of the foregoing facts shows that defendants have used BCI as an instrumentality dominated and controlled by defendants and their agents and never treated as an arms's length subsidiary. This synthesis reflects all the elements of the Department of Labor criteria for finding an employer-owner liable under the WARN Act and regulatory criteria.

20

82. The synthesis also reflects the elements required to pierce the corporate veil under the standards and criteria required in this Circuit because "ERISA preempts any state law of veil piercing and federal courts apply a federal common law standard of corporate separateness"; "the doctrine of corporate entity, recognized generally, and for most purposes, will not be regarded, when do so would work… injustice"; "the corporate form may not defeat overriding federal legislative policies" and "when it is inequitable to do so and thereby avoid financial obligations to employee benefit plans."

83.    The criteria reflected in these facts include:

a.  Common ownership -100%

b.  Common officers/directors

c.  BCI not capitalized.

d.  Dependency of operations on controlled credit line with expenditure caps.

e.  Garrison credit facility took lien on all BCI assets upon acquisition.

f.  Restricted banking access to operating funds, managed by Garrison retained third party.

g.  Total financial dependence; no unencumbered assets.

h.  Garrison selected and appointed Chair of Board, Andrews

i.  Garrison selected Management Board Members including Garrison employee/officer Brandt.

j.  Garrison Chief Financial Officer and Chief Compliance Officer Chase served same positions for BCI LLC with Garrison Bristol, LLC.

k.  Garrison selected restructuring/liquidation manager: authorized shutdown, liquidation, but no 60-day notices to employees and no payment of defined benefit severance pay plan owed under ERISA as fiduciary of plan.

l.  Garrison negotiated the JCI production contract that extended closure for added

revenue.

m. Garrison managed final closure, liquidation sales of assets including compressor manufacturing equipment sale to a buyer in Thailand.

n. Liquidation sales expected to net $29,000,000, but no liquidity applied to BCI for legal obligations to employees rather, Garrison invested in efforts to evade liability for them.

o. Total control.

p. Garrison hired counsel to defend against Plaintiffs' ERISA and WARN Act claims in the Class Action.

## RELIEF REQUESTED

**Plaintiffs pray that this Court**

1. Enter judgment against defendants and their owners individually, jointly and severally for all amounts, due and owing plaintiffs under this Court's judgments in the amount of FOUR MILLION SEVENTY-EIGHT THOUSAND ONE HUNDRED FIVE DOLLARS AND ELEVEN CENTS. ($4,078,105.11) plus accumulated interest, fees, cost, and attorney's fees for prosecuting this matter, amounting to FIVE MILLION DOLLARS (5,000,000.00).

2. Grant Plaintiffs receiving WARN Act backpay, the payment of employer wage contributions and the cost for engaging expert accountants for computations of withholding from the backpay compensation and tax filing as required by law.

3. Order an accounting of all financial records and accounts, including liquidation of BCI assets, showing distributions and recipients of all revenue.

**PLAINTIFFS DEMAND A TRIAL BY JURY FOR ALL ISSUES SO TRIABLE**.

Plaintiffs

**Tony A. Messer, et al.
By counsel**

 **/s/   Mary Lynn Tate**

**(VSB 16085)**

**Tate Law PC**

**P.O. Box 807**

**211 East Main St.**

**Abingdon, Virginia 24212**

**T: (276) 628-5185**

**mltate@tatelaw.com**